Well, good morning. May it please the court. I'm Thomas Haney. I represent Depaul Brooks in this matter, and I've represented him since the trial in this matter, and I represented him at that time. This incident occurred in 2006. Mr. Brooks and Mr. Fields were indicted in 07, and we tried the case in January and February of 08. I filed five claims on appeal, five matters for appeal, namely the expert testimony, the sentence reasonableness, a motion for acquittal, the multiplicity issue, and the search and seizure issue. First of all, I'd like to cover them, but not necessarily in the order that I placed them in the brief. On the multiplicity, double jeopardy issue, is it going to make any difference in the end as to what the sentence is? On the double jeopardy issue? Yes. The sentences are to run concurrently? That's correct. But there was a sentence enhancement for the purpose of multiple counts. So if there had not been multiple counts, then the guidelines would have been two points, two guidelines less. And so on all three, that would be the case, all three of the counts he was convicted on? Well, there were two defendants who went to trial, so there would be only two defendants at trial. The third defendant was a witness for the government. I understand that, but how many counts was your client convicted of? Four, or two. Excuse me, two. There were four counts, 115-91, 124-23, for each defendant. So there were four counts in the indictment. The client was convicted of two of those counts. And as to one of them, was there an enhancement, or was the enhancement applicable to both? The enhancements were considered on both. But the multiple count guidelines were because of the different counts. So had there been one count, then there would not have been the multiple count issue. I would like to go on with the expert that was cited by the government or was brought in by the government. I submit that it was an abuse of discretion for that witness to testify. She was a member of the vice crew on the city of Phoenix, not necessarily a member of the squad that seemed to try the case. But nevertheless, she was simply another police officer who came in and testified as to terminology that was not even used in the case, that she had no prior experience as an expert, although she claimed on direct examination that she was an expert on cross-examination. Her expertise, such as it be, was from a case in which she was the chief investigator and otherwise a precipient witness. Her other expertise seemed to be a couple of seminars and a class that she gave other police officers and or prosecutors. Would this be harmless error? It doesn't seem to me that it affected your client. It could be harmless error, Judge, but the point is it simply ballooned the government's case to be larger than it was. It was more than modus operandi. It was actually putting in matters that did not occur in this case. For instance, the expert said that, well, individuals who run these operations usually brand their girls. Well, Julia Fountain, though, the one defendant who testified, said that she wasn't branded. The expert said that methamphetamines or other drugs are never given to the girls, but yet one of the girls involved, N.K. or Doe 2, used methamphetamine prior to going to California. The expert also testified as to beatings are often given to the girls. There was never any beating in this case, even though one of the girls, N.K., Doe 2, never performed any sex acts for anyone during the time that she was with the defendants. She also said that they usually have sex with their controllers or pimps, as they call them in the record. There was no sex between these individuals and those girls in this case. The expert, I submit, was overdone, unnecessary, and made it appear to the jury that this was a big organized crime operation when, in fact, it was two guys or maybe one guy who was pursuing some unreasonable conduct. On the sentencing issue, I'd like to go back to that. It was unreasonable. The sentence was unreasonable, eight years, for my client's association in this matter. There is nowhere in the record that he ever encouraged, ever had sex, ever was instrumental in promoting conduct by these girls. He never received any of the victims' money. He never purchased any bus tickets. In the video of this matter where the bus tickets were purchased for these girls, the two defendants are standing there. One defendant is negotiating a purchase of bus tickets. My client, Brooks, was standing there and never said a word the entire time. And yet, even though the jury instruction said mere presence is not enough, there must be more, as far as purchasing tickets goes, my client was there, and that's all he was, is there. He was a hanger-arounder. He was an accompaniment. The only things that he did, or can be argued that he did to promote the matter, was that he did rent motels and he did drive the vehicle. The biggest reason is he had the identity. He had identification documents and he could rent a motel room and he had a driver's license so that he could drive. I wanted to follow up something that is in your brief that relates, in my mind at least, to the rental of the hotel rooms. You argue that the enhancement for entrustment of a minor to the care, in the care, custody and control, et cetera, should not apply. And it seemed to me that there were several pieces of evidence that could support that, and I'd like your reaction to that. The defendant knew that these minors were runaways from a juvenile facility, knew they were juveniles, and knew that there was nobody else taking care of them, provided hotel rooms, provided food, at least helped arrange this transportation. It's not the kind of care and custody and control that is beneficial necessarily, but why isn't that a form of care, custody and control? Well, I'll answer that issue. And I had an entrustment marked here with a star to be sure I got to it. They were not entrusted to my client. These individuals met at a motel in Mesa on Apache Boulevard. They had just been cohabiting with another individual who was an adult friend of one of the juveniles, and their time in the motel was up. They were kicking about the streets. My clients ran into them, or the two defendants ran into them, and basically offered them a place to stay. Right. Why isn't that care, custody and control? I'm going to give you a place to stay. I'm going to give you food. I'm going to take care of you. But my client never did that. My client was simply on the scene, and he stayed there. He was accompanying the other defendant. But he did none of those things, and the record sustains that. Okay. So let me be sure that I understand your argument. Is your argument that, in theory, this enhancement can't apply when, in this type of situation at all, or is it simply that your client was too hands-off personally to be charged with it? In other words, an evidentiary rather than a theoretical objection, or is it both? He is too hands-off to be charged with entrustment or undue influence. So it's really an evidentiary objection rather than a theoretical objection. Well, it's an objection that enhancements should not have been given for an entrustment or the undue influence. The Court cited a case from another circuit, Jennings by name. It's in the record that is another circuit. The 11th Circuit case. Yeah. And also the government has cited in support of its sentence the Patterson case after the briefs, 576 Federal 3rd. And that case clearly states only if the influencer succeeds in altering the behavior of the victim is he involved as influencing. Okay. That's the other enhancement that you're talking about. That's the other enhancement. The undue influence enhancement of a guideline of 2 for a guideline of 30 for a guideline sentence of 8 years and 1 month. The other issues on acquittal of a motion. I move for a motion for acquittal at the close of the case. N.K., Doe 2, testified that she did not go to California to be a prostitute and she did no commercial sex. That's excerpt of record pages 494 and 95. It was Jane Doe 1 who persuaded her to go to California. It was not Mr. Brooks by any means. I felt that the counts were multiplicitous, 1591 and 2423. 1591 allegedly has two additional issues, must know the victims are under 18 instead of finding out they are later, and requires a commercial sex act. The judge found that that part of it was a close one, but I submit these multiplicitous indictments simply are, again, inflame the appearance to a jury that there is more crime here than really occurs. Counsel, you have exceeded your time. My time is up. Thank you. We're here for Mr. Handel. Mr. Handel and I have agreed that if there's time at the left of his matter, either one of us can use the rebuttal. Sure. That would be fine with us. No problem. May it please the Court. I'm Phil Handel. I represent the other defendant in this matter. I don't know that I have that much to add to what I put in the papers. I guess I'm just hearing the argument of co-counsel. I would just add a couple of comments. First, relative to the harmless error position regarding the expert from the police, I'd also submit to what, in addition to what co-counsel said, that the, her name is Sine or Ms. Fontenot, who was the female individual that was in California that facilitated  I think that the expert enhanced her credibility some, in the sense that moved her from what I think the defense's position was at the trials, that she maybe was the one that was arranging for this whole thing to happen, whereas my client and the co-defendant perhaps were workers in this organization. When you hear the testimony of the expert and make her the bottom girl, and it switches her role in the sense that she was now working for Mr. Brooks or Mr. Fields. So I think that in that sense, I don't know that it is necessarily harmless. Your theory was that she was the head of the illicit operation. Yes. Is that correct? And I think that that, you know, doesn't make it harmless unless she's qualified to talk about more than just a tattoo and that sort of thing. And I think the second thing that I would add, and I didn't use initials, so I just used the first names of the two victims, Nicole, which is what co-counsels referred to as number two, and the sufficiency of the evidence that she engaged or intended to engage in prostitution. I think it was pretty clear throughout the case, and I don't think I made it all that clear in my brief, and I apologize for that, is that she was, the first girl, Randy, was very interested in having her friend come along. They had run away from this pathway house or drug treatment facility together. When Randy agreed to engage in this prostitution from the get-go, her one comment was, well, what about Nicole? What am I supposed to do about her? I can't leave her high and dry. So I think that when co-counsel was referring to those things, I think that the point is that I don't know that anybody had any intent from the beginning to have Nicole engage in prostitution. I think they were bringing her along in order to make sure that Randy was comfortable and they weren't leaving her high and dry. And again, it goes back to Ms. Fontenot's testimony that she was the one that set up the Internet website in the hotel room. That certainly wasn't at the bequest of my client. And for those reasons, again, it goes back to changing her role from being a minor player and as to being the ringlinger. If anything else, I'd be happy to answer questions. I don't believe we have any other questions. So either or both of you will have some rebuttal time if you want to. Thank you. We'll hear from the government. Good morning. Joan Rufinock appearing on behalf of the United States. A few factual corrections. Each of the defendants was, in fact, convicted of four counts, two counts relating to the first victim, two counts relating to the second victim. So with regard to the multiplicity, there would be no need for resentencing were this Court to find the counts multiplicitous because they were grouped by victim, not by counts. And so what the Provost said was the same. That would not be harmless. Correct. But I was speaking to it from the multiplicity aspect of it. Because in the grouping, like I said, it was by victim. With regard to ---- Tell us exactly what the distinctions are between the two statutes and what are the elements that are missing in one, not in the other. Okay. 1591 is broader than 2423. 1591 says if a person recruits, entices, harbors, transports, provides, or obtains a person who is known to be under the age of 18, and knowing that that person is going to engage in prostitution or caused to engage in prostitution, that they are guilty of 1591. 2423a says that if a person transports another person in interstate commerce intending that that person engage in prostitution and the person is under the age of 18, that they are guilty of an offense. So the difference is 1591 requires us to prove that the defendants knew that these girls were under the age of 18. 2423a does not. It just requires proof. Well, it might be a lesser included, then. No, because there's also the intent element, which is in this case, this Court has just said in Todd, and I submitted a 28J letter with regard to the Todd case, that the knowledge requirement is not only that they knew the girls were under the age of 16, but that they knew they were going to be caused to engage in prostitution. And because that's a future act, this Court said the way that we tell the future act what's going to occur is from a pattern or practice of what's been going on. We know from the testimony of Julia Fontenot that the defendants caused her or Defendant Brooks, I'm sorry, Defendant Fields caused her to engage in prostitution. We also know from this very case itself that they caused R.O. to engage in prostitution. So this the jury was able to infer from the R.O. testimony that they also knew that from this pattern and practice that N.K. would eventually be caused to engage in prostitution as well. On the other hand, 2423a requires specific intent that these girls engage in prostitution. So it's a different intent element for the two offenses as well. Did I explain that sufficiently to your satisfaction, or would you like additional? Well, I guess I'd have to agree with the district court. This is an awfully narrow difference. It is. But if I can give the Court an example to show a difference, because I think there could be an example. It's not in this case. In this case, we've satisfied the elements of both. But I think there could be a case. For example, if you have someone who has an arrangement with a pimp in California and we're in Arizona, and the person, the defendant who's in Arizona knows the pimp and has girls that he's bringing over to the pimp, and he knows that the pimp is going to have them engage in prostitution, the defendant in Arizona doesn't have to care that these people are going to engage in prostitution. He doesn't have to intend that they're going to engage in prostitution. For all he cares, once he gets them over to the pimp, who compensates him for his transporting these girls over there, his job is done. He's guilty of the offense of transporting them to California from Arizona, knowing that they're under the age, knowing they're going to engage in prostitution, because that's what the pimp's going to have them do. Does he intend that they engage in prostitution? No, because once he gets them over there, his job is done. So that person would not be guilty of 2423A. So there is – it is a fine distinction, but there are cases out there which are distinguishable, and therefore, I'd submit that it's not multiplicitous to charge under both statutes. With regard to the evidence in this case on Defendant Brooks, he did more than simply stand around. The evidence was that he rented the rooms for this operation. When they were in Arizona and they first encountered the two minor girls in the parking lot of the hotel, he engaged in conversation with them. He and Fields both invited the girls to stay at the other hotel. Fields, in fact, did not spend that night with them, but Brooks did. And when Brooks was in the room with them, he discussed turning tricks with RO, and he also encouraged her to go to San Diego to work for Defendant Fields. So that's active encouragement and enticement to get RO and N.K. to engage in prostitution over in San Diego. Would you address the argument of both defendants that the evidence was sufficient with respect to victim R, but not with respect to victim N, that she was not really intending, that nobody was intending for her to engage in prostitution, et cetera, et cetera? You know their argument, but if you would also address that. And if I can set a little bit of the scene for the Court, because there was discussion about methamphetamine, and N.K. took methamphetamine for the first time when she was, when she first left the Juvenile Rehabilitation Center. So she was on drugs, and she was on hard drugs for the first time. So she was out of it. And I think her testimony reflects that, because she had a very bad memory, and she testified to what she could testify to, but she said a lot of things she just doesn't remember. The better evidence came from RO. And what RO testified to was that both the girls were encouraged to go to San Diego to engage in prostitution by Defendant Brooks when they were in the hotel room, that the next day when Defendant Fields took RO in the car, told her he was a pimp, she tells him she's 16, and she says, well, what about my friend? I'm not going to leave her high and dry. And he goes, that's okay. She can come along, too. And then knowing that she's going to be coming along, too, the defendants then both drive the girls to the bus station. At the bus station, both the defendants go inside, and the videotape shows them both inside the bus station. They come out with bus tickets for the girls in aliases. They give those tickets to the girls and tell them that they're going to be going over separately later that evening. So that evidence shows that they intended for both of the girls to be transported to San Diego. The fact that we know, or what we know with regard to the fact that they were going to be caused to engage in prostitution, both of them, is that both of the girls were listed on Craigslist as prostitutes, that the Craigslist ads were very clear that one of the girls, and even N.K. testified to this, that Julia posted advertisements for each of the girls on the Internet. N.K. recognized that one of them was supposed to be her, and one of them was supposed to be R.O. Again, evidence that they intended for both of these girls, not just R.O., to engage in prostitution. As it happened, N.K. didn't get any hits. She didn't get any phone calls for her services. R.O. did. That doesn't mean that the defendants didn't intend for her to eventually engage in prostitution, and I submit that the jury was free to infer that that would have happened had R.O. not been picked up by the police and had that information not been communicated to the defendants, such that the defendant picked up N.K., took her to the bus station, and dropped her off with nothing. He got R.O.'s clothing and N.K.'s clothing, got them out of the hotel room and dropped her off so that he wouldn't be associated with the 16-year-old anymore at that point. So I think that all that is evidence that they intended for her to. They knew that if she stayed with them, eventually she would, given the pattern and practice, but it just simply had not occurred yet at that point when they were arrested. Would you also address the applicability of the two sentencing enhancements, the care, custody and control, and the other enhancement as well? With regard to care, custody and control, the guidelines in the case law says look to the actual relationship that you have between the minor and the defendants, as opposed to some strict interpretation. Here, as the Court previously noticed, you have the defendants providing two homeless at that point penniless girls who had no means of support. They had no plans, and they had just been evicted from a hotel room. They provided them with a place to stay. They provided them with food. They provided them with bus tickets over to California. They provided them with a phone number in California to contact so that they would have a place to stay once they got to California. From that location, both the defendants entrusted the girls to Julia Fontenot, a co-defendant, for her to teach them how to engage in prostitution, the way that their operation operated. It's hard for me to imagine how you can violate the principal crime statute and not get the two. I mean, any time you victimize a minor, you probably have custody over her. By your argument. I mean, it seems to me, you know, you talk about in the application notes babysitters, daycare providers. You know, that's a position of special trust that somebody is in. I agree the beginning of your argument certainly supports the enhancement for vulnerable victims. But custody is there. But there can be a larger operation. I'm talking about it from the specific facts of this case where each of the defendants was intimately involved in each of those things, in providing food and providing transportation and providing hotels. You can have a bigger operation where, for example, if there were another level of the hierarchy here and you had more than just Brooks and Fields, you had somebody else that was causing those two to go out and solicit and recruit and entice and taking money from them. That person wouldn't be necessarily responsible for care, custody and control, because that would have been delegated to Brooks and Fields at this level. But you had another level that so that it wouldn't apply to necessarily everybody in every single case that was prosecuted. And again, it can be because there were just the two of them here, you can have different people involved in the operation doing different jobs. In this case, both defendants did similar jobs, and that's why they're both responsible for care, custody and control. But that's not to say that in every case that would be an appropriate enhancement. And would you also briefly at least address the influence? With regard to both defendants or specifically Fields? I think they both argued that. If you remember Brooks, I know Mr. Brooks did make the argument on undue influence. Defendant Fields doesn't dispute that he was over 10 years older than both of the girls, so the rebuttable presumption comes into play for Defendant Fields because the guideline section specifically references a participant in the scheme being at least 10 years older and unduly influencing. In this case, the district court found that Fields was clearly 10 years older, that he recruited and enticed these girls, and that but for the recruitment and the enticement by Fields and Brooks, these girls never would have engaged in commercial sex acts. So therefore, the enhancement appropriately applies to Defendant Fields. With regard to Defendant Brooks, he was just short of 10 years. The Court did two things with regard to Defendant Brooks. It found that because the guideline can be read to say, and it's meant to be interpreted broadly, that it says a participant, because Fields was a participant, that Brooks could be responsible for the rebuttable presumption on the basis of Fields being 10 years older, and that nothing had been done to rebut the presumption. Therefore, Brooks was also responsible. But independent of that, the Court also found that on his own that Brooks unduly influenced the girls to engage in prostitution because he knew everything that Defendant Fields was doing. He knew the purpose of renting the rooms was so that the girls could engage in prostitution. He knew that assisting them in getting them to California and then driving them back to Arizona was for purposes of having them engage in prostitution. And again, there was absolutely nothing to show that these girls would have engaged in commercial sex acts, in other words, sex for money, prostitution, had they not been influenced by both of the men jointly. And I see that my time is almost up. If the Court has no further specific questions, then we would ask the Court to affirm the convictions and the sentences in this case. Thank you, counsel. Defendants have some time, and I don't know who's using it. I'd like to clarify a few points, if I may. On the multiplicitous issue, it's really a narrow guideline. If we say that in one case on a sex statute across State lines is that the defendants must know they're under 18, but on the other hand, on the other statute, 2423, they may not know it, but if they are, then, of course, they're guilty. This is an unnecessary hair-splitting of our statutes that really creates bedlam, probably in the appellate courts, because here's where you deal with it in case after case. And if the sentencing would be the same anyway, why is it done? Is it done for plea bargain material, perhaps? It's done just because the government isn't certain whether a jury will find that the defendant knew. That may be another reason. If the defendant comes in and says, hey, you know, she said she was 19, she looked 19, what did I know? You know, so it could be, depending on the proof that comes out, because the proof is different. It could be. It could be, and it could be an affirmative defense that they appear to be older. I understand that, Judge. I just think that multiplicitous has always troubled me in these cases, and it's very, very narrow definitions that always seem to be appealed and always seem to be argued about. In respect to Mr. Brooks being together with the victims overnight, there was another fellow involved here by the name of Lee. Lee was never really identified with certainty. There is a Lee Smith somewhere in the case reports involving another case, but he was never charged and never identified with certainty. He was there with the girls. And he, in the record, it's Lee and Brooks and Fields in the parking lot of the Rawls Motel when the group met up. And so I think we have to attribute some of those matters possibly to this fellow, Lee, when Brooks, there's really no testimony that he said anything really explicit. It's just sort of, well, he was there, he must have known. Well, Brooks is certainly not an incompetent individual, or I would have raised the issue of mental competency. But Brooks is a result of foster homes in San Diego and a high school dropout, and basically his only employment has ever been casual labor jobs. So basically, we have a person who's not very ambitious that kind of went with the flow and just kind of hung out. As far as him being just short of 10 years older, he was 24 at the time of the incidents. The girls were 15 and 16. So I would say that there was certainly a year there regarding the undue influence. And also to counsel statements about the girls not engaging in sex acts, when N.K. was dropped and unable to be utilized by Mr. Fields, she immediately encountered a taxi driver and gave him sex in exchange for $50. Yes, she was broke. But talk about commercial sex acts. These girls were out there, so to speak, not a nice term, but giving it away. And it just happened to be that my clients got in the way, so to speak. But at the same time, they were engaging in acts on their own in exchange for food or a hotel room or for bus fare or whatever. Thank you. Thank you. Did you wish to rebut also? I don't believe so. Thank you, counsel. We appreciate your arguments. And this consolidated case is submitted.
judges: Fletcher B. , Canby, Graber